■ ASSOCIATED COAL SALES CORP. et al., Appellants, v JOSEPH T. HUGHES, Respondent.—Order, Supreme Court, New York County, entered May 27, 1976, denying plaintiffs' motion for a preliminary injunction, unanimously reversed, on the law and the facts and in the exercise of discretion, and the motion granted to the extent of forbidding defendant from soliciting or engaging in any business activity on behalf of any coal customer, supplier, lessor, or client of the corporate plaintiff who was such at any time that defendant was an officer, director, employee or shareholder of the corporate plaintiff. Appellants shall recover of respondent $40 costs and disbursements of this appeal. On October 28, 1975, defendant and the individual plaintiff entered into a stockholders' agreement with respect to the recently formed corporate plaintiff. The agreement contemplated that defendant would own 25% of the stock and would be a director and

president of the corporation. Defendant agreed to devote his full time to the corporation's business and promised not to cultivate any interest in any competing firm in the field of "exploring, exploiting, mining, processing, handling or transporting coal or any other material resource or synthetic substitute therefor" for a period of three years after he should cease to be a stockholder. Plaintiffs were given the right to seek an injunction to enforce the restriction. Defendant did not refute on this record the affidavit of an officer (the secretary) and director of the corporate plaintiff to the effect that he dictated to said secretary an agreement reached with Thyssen, Inc., soon after execution of the afore-mentioned stockholders' agreement wherein it was contemplated that this plaintiff would become the exclusive buying agent for Thyssen of all coal to be exported by the latter for which this plaintiff would receive a participation in the profits and a brokerage commission of 75 cents per ton. This agreement, which was to last for five years commencing September 30, 1976, was unsigned. The secretary further declared that defendant reviewed the Thyssen agreement after it was typed and stated that it accurately reflected an agreement that he, as president of the corporate plaintiff, had negotiated with Thyssen. Indeed, the Thyssen agreement emanated, according to the secretary, from notes in defendant's own handwriting. Defendant simply asserts that the agreement is bogus and was never signed by any party. It further appears that with respect to a particular transaction (Korean coal shipment), Thyssen was billed over $309,000 by the corporate plaintiff, but paid only $223,000 on or about February 10, 1976. Plaintiffs accuse defendant of securing to himself the payment of the balance due, an accusation to which the defendant never responded. Upon close analysis, there is an insufficient showing supportive of defendant's claim that he disassociated himself from plaintiffs, albeit without resigning his fiduciary positions nor surrendering his stock in the corporate plaintiff, because plaintiff Birnbaum had allegedly sabotaged the corporation's primary project, incurred ill will with defendant's principal business acquaintances and had attempted to cheat Thyssen. On the contrary, it appears that defendant negotiated the agreement with Thyssen, and that the latter may prefer to deal directly with the former is no excuse to expect defendant to flout his fiduciary duties. The court notes that the instant shareholders' agreement was entered into long after the demise of a prior attempted venture in which defendant sought to interest Birnbaum. In the case at bar, we are not confronted with the sale of a business, but with the creation of a new enterprise. In this light, the function of the restrictive covenant relied on by plaintiffs is not merely to stifle competition. Defendant's attempt to show that the corporate plaintiff is not a viable business, with the consequence that an injunction would be a vain act, which was accepted at Special Term, is not persuasive. On this record it appears that defendant may well have diverted to himself not only funds belonging to the corporate plaintiff, but also business opportunities that he had developed on behalf of said plaintiff. This diversion has occurred while defendant retains his corporate positions and stock ownership. Such conduct may not be countenanced on the bald assertions that an injunction would deprive the defendant of his livelihood and that, having divested the plaintiffs' business, the injunction would be useless since the plaintiff is no longer in a position to compete with the wrongdoer. A limited injunction as above indicated is warranted. Settle order on notice, including suggestions as to the amount of the undertaking to be posted. Concur—Kupferman, J. P., Lupiano, Silverman and Lane, JJ.